IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

BRENDA ORTIZ-MALDONADO,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security[1],

Defendant.

CIVIL NO. 19-1382 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

On April 23, 2019, Plaintiff Brenda Enid Ortíz-Maldonado ("Plaintiff") filed the present case challenging the denial of her petition for Social Security disability benefits by Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner" or "Defendant"). (Docket No. 2).[2] Plaintiff consented to proceed before a Magistrate Judge and the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment. (Docket Nos. 16, 18 and 19).[3]

On December 17, 2020, the Commissioner answered the Complaint and shortly thereafter filed a copy of the administrative record. (Docket Nos. 30 and 31). On March 22, 2021, Plaintiff filed her memorandum of law (Docket No. 43) and on April 19, 2021 the Commissioner filed her memorandum of law. (Docket No. 44).

---

[1] At the time this case was filed, Andrew Saul was Commissioner of Social Security. On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of said agency. Commissioner Kijakazi is therefore automatically substituted as a Defendant in this case. See Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "… [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[3] The government has provided a general consent to proceed before a Magistrate Judge in all Social Security cases. 28 U.S.C. section 636(b)(1)(A), (c)(1) and (c)(2); Fed. R. Civ. P. 73(a).

Brenda Ortíz-Maldonado v. Kilolo Kijakazi
Opinion and Order
Civil No. 19-1382 (CVR)
Page No. 2

After careful review of the entire record, the Court AFFIRMS the Commissioner's decision.

### ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former security guard and retail store clerk, filed an application for disability benefits with an alleged onset date of disability of September 12, 2011. The application was initially denied, as was the reconsideration. (Tr. pp. 109-112 and 113-115). Plaintiff then requested an administrative hearing before an Administrative Law Judge ("ALJ") which was held on March 1, 2017, where Plaintiff was present with counsel and was able to testify regarding her claims. (Tr. pp. 74-106). During the hearing, testimony was also heard from a Vocational Expert ("VE") regarding the kinds of jobs that Plaintiff could perform despite her ailments. (Id.). On May 17, 2017, a second hearing was held because certain medical evidence was missing from the record during the first hearing. (Tr. pp. 47-71). A VE was not available during this second hearing to help the ALJ analyze the new evidence. Consequently, at the conclusion of the hearing, the ALJ sent the VE a written "Vocational Interrogatory" to ascertain Plaintiff's residual functional capacity ("RFC") considering the recently submitted evidence. (Tr. pp. 1187-1190).

On November 2, 2017, the ALJ issued an opinion finding Plaintiff was not disabled from the onset date through her last insured date. (Tr. pp. 21-36). As part of the ALJ's fact-finding responsibilities, he made the following findings of fact in this case:

1. Plaintiff last met the insured status requirements of the Social Security Act through December 31, 2016.

2. Plaintiff did not engage in any substantial gainful activity during the period since the alleged onset date of September 12, 2011 through her last insured date.

3. Through the last insured date, Plaintiff had the following severe impairments: lumbar degenerative disc disease, lower extremity neuropathy, history of left deep vein thrombosis, migraine headaches, chronic obstructive pulmonary disease, a history of pulmonary embolism, obesity, and depression.

4. Through the last insured date, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1.

5. Through the date last insured, Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a), except for the following limitations: she could frequently balance, kneel, or crawl and could occasionally stoop, crouch, or climb ramps and stairs, but could never climb ladders, ropes, and scaffolds. She was limited to work environments with no more than occasional exposure to moderate levels of pulmonary irritants such as fumes, or dust. Due to her depression, she could understand, remember, and perform simple tasks, to make work related decisions with simple tasks, to adapt to change in a normal work environment with simple tasks, and to sustain and maintain pace and concentrate for two-hour periods after which she would require a standard rest or meal break. Furthermore, she was

       able to interact appropriately with the public, supervisors, and co-workers in an environment where there was no more than occasional interaction with the public and no more than frequent interaction with supervisors of co-workers.

6. Through the last date insured, Plaintiff was unable to perform any past relevant work.

7. Plaintiff was born on June 9, 1974, and was 42 years old, which is defined as a younger individual, age 18-44, on the last insured date.

8. Plaintiff was not able to communicate in English and was considered as an individual who was illiterate in English.

9. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that Plaintiff was "not disabled", whether or not she had transferable job skills.

10. Through the date last insured, considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, stuffer, ING reel assembler and lens inserter.

11. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from September 12, 2011, the alleged onset date, through December 31, 2016, the last insured date.

The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner which is subject to review by this Court. (Tr. pp. 1-3).

Plaintiff objects the ALJ's final decision denying her disability benefits, alleging the conclusion that Plaintiff was not disabled was not supported by substantial evidence. The Commissioner disagrees.

**STANDARD**

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, 107 S.Ct. 2287, 2294 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

To determine whether a claimant is disabled, a five-step sequential evaluation process must be applied in making a final determination. 20 C.F.R. § 404.1520; see

Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).   At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."   If he/she is, disability benefits are denied.   § 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments.   See § 404.1520(c).   If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, to determine whether the impairment or combination of impairments is equivalent to one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. § 404.1520(d); 20 C.F.R. pt. 404, Subpt. P, App. 1.   If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.   If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past.   If the claimant is able to perform his/her previous work, he/she is not disabled.   § 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience.   The claimant would

be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. § 404.1520(f).

In the case at bar, the ALJ concluded at step 2 that Plaintiff had several severe impairments, and at step 3 that those impairments were not equivalent to any listed impairment and were not severe enough by themselves to preclude gainful activity. The ALJ then found at step 4 that Plaintiff could not perform her previous work as a security guard and retail store clerk, and then at step 5 found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as stuffer, reel assembler and lens inserter. Therefore, the ALJ concluded that Plaintiff was not disabled.

## LEGAL ANALYSIS

The Court is authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record and enter a judgment either affirming, modifying, or reversing the final decision of the Commissioner. That review is limited, however, "to determining whether the [ALJ] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). The Court must defer to the ALJ's findings of fact if those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortíz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (*quoting* Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). On the other hand, if the findings and conclusions are

reached by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," then they are not conclusive and must be reversed.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

It is important to note that "the drawing of permissible inference from evidentiary facts are the prime responsibility of the Commissioner, and the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."  Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018), Nguyen, 172 F.3d at 31.   Thus, this Court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error.  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez, 647 F.2d at 222.

Plaintiff asserts that the ALJ's conclusion was not supported by substantial evidence, and challenges the weight given to the opinions of her treating physicians.  She argues that they found she was disabled and there was no other record evidence to rebut this conclusion.   For this reason, she says the ALJ imposed his judgment over the record medical opinions when he concluded the opposite, that she was capable of working.  Plaintiff also complains that no consulting exams were performed.   Finally, and without providing any developed argument, Plaintiff also contends that her statements about her pain were uncontroverted and that the ALJ's hypothetical question was unspecific, compound, and suggestive.

In turn, the Commissioner argues that the Court must deem waived most of Plaintiff's arguments because she failed to develop them or cite to any record evidence in support of them.   The Commissioner additionally proffers that the ALJ cited to a

multitude of evidence in support of his finding that Plaintiff was not disabled, and the Court should therefore affirm the ALJ's ultimate finding.

The Court discusses Plaintiff's claims jointly because they are intertwined and disagrees with her contentions.

An ALJ is required to consider medical opinions along with all other relevant evidence in a claimant's record. Ledoux v. Acting Comm'r, Soc. Sec. Admin., Civil No. 17-707-JD, 2018 WL 2932732, at *4 (D.N.H. June 12, 2018). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis, and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ then analyzes the opinions of state agency consultants, examining sources, and treating sources and reaches a conclusion as to a claimant's capacity for work.

The relevant legal standard for a claim filed before March 27, 2017 is that a treating physician's opinion is controlling if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." See Purdy, 887 F.3d at 13. Treating physicians' opinions are ordinarily accorded deference in Social Security disability proceedings because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief

hospitalizations". 20 C.F.R. § 404.1527 (c)(2). If the treating-source opinion conflicts with other opinions in the record, then the ALJ "may reject the opinion of the treating physician so long as an explanation is provided, and the contrary finding is supported by substantial evidence." Tetreault v. Astrue, 865 F. Supp. 2d 116, 125 (D. Mass. 2012).

As an initial matter, the Court notes that Plaintiff makes a sweeping, generalized statement that her treating physicians opined she was unable to work and "the opinions of all the treating physicians are all consistent and supportive of one another, and as such, were entitled to substantial weight." Docket No. 42, p. 8. She cites to none of these opinions, however, in support of her claims. The Court reminds Plaintiff that she bears the burden of establishing at steps 1 through 4 that she has one or more conditions that prevent her from performing any gainful activity. See 42 U.S.C. §§ 423(d)(5)(A); López-González v. Comm'r of Soc. Sec., 59 F. Supp. 3d 372, 375 (D.P.R. 2014); Santiago v. Sec'y of Health & Human Serv's., 944 F.2d 1, 5 (1st Cir. 1991) ("At steps one through four, the claimant has the burden of proving that she cannot return to her former employment because of the alleged disability"). Plaintiff failed to meet this standard.

For example, regarding Plaintiff's physical ailments, Dr. N.E. Fontanez ("Dr. Fontanez") did not opine, as Plaintiff argues, that she was disabled. In an opinion rendered on January 8, 2015, Dr. Fontanez stated instead that Plaintiff was substantially limited in her abilities to carry out her normal activities but could still perform light mental and physical exertion. (Tr. p. 2216). Dr. Luis Díaz ("Dr. Díaz"), Plaintiff's cardiologist, certified that she suffered from thrombophlebitis, bilateral pulmonary embolism and had a vena cava filter, and recommended she obtain a ground floor living

space to accommodate her equipment. (Tr. p. 838 and 2288). These opinions do not denote total disability. Additionally, as the ALJ noted, these opinions lack a more detailed, function by function analysis of Plaintiff's physical limitations, and are therefore of more limited value in establishing her RFC. Thus, the ALJ gave them less weight, but still incorporated these limitations into his final RFC.

A look at additional treatment records throughout the relevant period also supports the ALJ's finding that Plaintiff was not disabled. Treatment reports and examinations on the record regularly indicated normal gait, station, ranges of motion, and muscle strength, unremarkable imaging of the lungs, some spine disorders but with generally normal results and normal respiratory diagnostic results. (Tr. pp. 827, 604-05, 1517-26, 1797-98, 1800, 1811, 1942, 1974, and 2009).

On the mental side, as the Commissioner points out, the ALJ observed that most of the opinions evidenced "largely normal mental status evaluation[s]" during the period from October 2012 through January 2014. Plaintiff was found to be logical, coherent, and with relevant thought process, full orientation and adequate affect, insight, and judgment, cooperative behavior, intact memory, and adequate concentration, intellectual judgment, and insight. (Tr. pp. 32, 630-41, 648, 656-659, 672-675, 1881-93, 1899, 1913-17, and 1950-52). These opinions were in turn supported by Plaintiff's own admissions that she was able to shop, go to the library, use the internet, wash, organize drawers, cook, listen to the radio, read, and attend religious services. (Tr. pp. 150-154).

The Court agrees with Plaintiff that her treating physicians were all consistent in their findings. However, such findings were the opposite of what she asserts. Plaintiff's

Brenda Ortíz Maldonado v. Kilolo Kijakazi
Opinion and Order
Civil No. 19-1382 (CVR)
Page No. 12

treating physician's records demonstrate that, although Plaintiff had some limitations, they were not severe enough to preclude her from total gainful activity. This militates against her argument that the ALJ substituted his opinion for that of her treating physicians, as it is evident that the ALJ adopted most of the record evidence that concluded that Plaintiff was not disabled and crafted an RFC accordingly. The ALJ restricted Plaintiff to sedentary work, which is the least demanding category, and imposed additional limitations on pulmonary irritants. Regarding her mental capacity, the ALJ also restricted her to performing simple tasks, to maintain concentration and pace for two-hour periods, to occasional interaction with public and frequent interaction with supervisors. Substantial record evidence supports this RFC.

Plaintiff's second sweeping allegation, that there are no opinions of record to rebut her allegations of complete disability, also finds no support on this record, for two reasons. First, and as previously discussed, Plaintiff's treating physicians and their treatment records establish that Plaintiff could perform at least some minimal work. Second, other record evidence containing opinions from agency consulting physicians and their conclusions also support the ALJ's determination that Plaintiff was not disabled.

Non-examining state agency physicians Drs. Florentino Figueroa and Dr. Rafael Queipó reviewed the record in July and October 2014.[4] They found that Plaintiff could

---

[4] The Court points out that, even though Plaintiff challenged the weight given to her treating physicians, the ALJ did not give full weight to the agency physicians' opinions either. The ALJ explained that he did not do so because the agency physicians only examined a cold record and were unable to benefit from an examination of Plaintiff. The ALJ also noted that he gathered additional information during the hearing that was not available to the state agency physicians. The Court finds the RFC in this case is a blend of the substantial evidence on the record from different sources that demonstrates that Plaintiff was not disabled. See Cox v. Astrue, No. 2:10-CV-26-DBH, 2010 WL 5260843,

perform less than the full range of light work, and limited her to frequent kneeling stooping balancing, and climbing ramps and stairs as well as to occasional crawling, crouching, and climbing ladders ropes and scaffolds. (Tr. p. 31). They noted that the record showed relatively conservative treatment and largely normal diagnostic results throughout, which were buttressed by Plaintiff's own acknowledgement that, despite her alleged impairments, she could prepare some meals, perform some household chores, drive, shop, go to religious services and to the library, among others. (Tr. pp. 151-153).

For this reason, the ALJ found their conclusions to be consistent with the overall record. The ALJ, however, also had the benefit of additional information when he drafted his Opinion, to wit, a more updated medical record, and was able to evaluate Plaintiff's demeanor as she offered testimony during the hearing. He concluded Plaintiff was more limited in her RFC than the light work recommended by state physicians and restricted her to sedentary work. The Court finds proper weight was given to these medical practitioners.

Turning to Plaintiff's mental condition, state agency examining physicians Wanda de Cardona ("Dr. de Cardona") and Barbara Hernández ("Dr. Hernández") concluded that Plaintiff had moderate social limitations (Tr. pp. 855-58 and 877-81). Drs. de Cardona and Hernández found no significant limitation in many areas of mental functioning such as the ability to maintain socially appropriate behavior, to sustain an ordinary routine, to make simple work-related decisions, and to carry out instructions. These conclusions

---

at *2 (D. Me. Dec. 16, 2010) (ALJ may draw from several different sources in the record to support his or her conclusions at any stage of the evaluative process).

were in turn supported by Plaintiff's own admissions that she was able to do some chores in and outside the home. (Tr. p. 152). These opinions were also supported, as previously discussed, by the largely normal mental status evaluations during the relevant period. (Tr. pp. 630-41, 648, 1881-93, and 1899).

Thus, the opinions of the state agency physicians were consistent with other evidence in the record. Thus, the ALJ properly gave them more weight. See 20 C.F.R. § 404.1527(c)(4); Berríos Lopez v. Sec'y Health and Human Servs., 951 F.2d 427, 431 (1st Cir. 1991); Bourinot v. Colvin, 95 F. Supp. 3d 161, 179 (D. Mass. 2015) ("Opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources", depending on the circumstances of each case).

Plaintiff also avers that no consulting examinations were performed in the case. A cursory review of the record reveals that is not the case, as three (3) consulting examinations were performed. Clinical psychologist Juan Figueroa ("Dr. Figueroa"), internist Ronaldo Cruz Hernández ("Dr. Cruz"), and pulmonary disease specialist José Zayas ("Dr. Zayas") performed examinations at the agency's behest.

On April 22, 2014, Dr. Figueroa examined Plaintiff. (Tr. pp. 1961-1969). He diagnosed her with a severe major depressive disorder recurrent, without psychotic features. Plaintiff's immediate and short-term memory were poor but her recent and long-term memory were not affected. He also found her coherent and relevant, with appropriate affect, with organized thought processes and without phobias, and with adequate concentration and attention levels. He ruled out a personality disorder, gave

her a guarded prognosis and opined her depression stemmed from her medical conditions. Dr. Figueroa concluded Plaintiff was unable to handle her funds and that she seemed unable to sustain simple social interactions due to her emotional symptoms.

The ALJ gave little weight to this opinion for two reasons. First, he found Dr. Figueroa's opinion to be a snapshot of Plaintiff's condition, as he only examined her on one occasion and did not have access to her subsequent medical records which evidenced conservative mental treatment. Second, the ALJ found Dr. Figueroa's conclusions clashed with all other medical evidence of the treating and agency physicians, who all agreed that, although Plaintiff had some mental limitations, she was not totally disabled.

It has long been held that the task of resolving factual conflicts and reaching a conclusion from that evidence is one that is reserved strictly for the Commissioner. See Purdy, 887 F.3d at 13 (the resolution of conflicts in the evidence and credibility and the determination of the ultimate question of disability is reserved for Commissioner); and Doucet v. Astrue, No. 12-2123, 2013 WL 12126354, at *1 (1st Cir. May 24, 2013) ("Weighing the evidence was the ALJ's prerogative"). Sifting through conflicting evidence, making a final determination as to what evidence to use and what to discard, and determining the weight each piece of evidence deserves is precisely the kind of issue the ALJ is tasked with analyzing.

On April 23, 2014, Dr. Cruz examined Plaintiff. (Tr. p. 1971). Dr. Cruz found relatively normal exam results, as Plaintiff showed no neurological, motor, or gross deficits, no inflammation, joint enlargement, or anatomical deformities. He opined

Plaintiff could stand, sit, walk, hear, speak lift, carry, and handle objects without complications. (Id.)

On June 2, 2014 a pulmonary function test was performed by Dr. Zayas and it rendered results within normal limits. (Tr. p. 2016).

Consequently, Plaintiff's allegation that no consulting tests were performed rings hollow.

In the end, but for Dr. Figueroa, both agency and consulting physicians concluded that, although Plaintiff suffered from some physical and mental medical conditions, these were not totally incapacitating. This was the same conclusion that Plaintiff's treating records revealed. Taken as a whole, these findings provide substantial evidence in support of ALJ's conclusion.

Plaintiff's last two arguments are cursory and undeveloped. She posits that the ALJ's "first hypothetical question to the VE was unspecific, compounded and suggestive". (Docket No. 43, p. 6). She also argues that statements as to her "pain remain uncontroverted", and that the record "is permeated with complaints of pain". (Id.). Plaintiff failed to cite to any evidence and likewise offered no developed argument in support thereof. The Court finds these issues waived simply because Plaintiff has not provided a sufficiently developed discussion that the Court can analyze. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). It is Plaintiff's burden to establish that she is disabled at steps 1-4, and because she provides no support for these propositions, she has failed to show how these two alleged errors can

lead to that conclusion. See 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled").

It has been clearly established that although the record may support more than one conclusion, we must uphold the Secretary "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortíz, 955 F.2d at 769 (*quoting* Rodríguez, 647 F.2d at 222); see also, Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Where the facts permit diverse inferences, the Court will affirm the Secretary even if the Court might have reached a different result, if that result is supported by substantial evidence. Rodríguez Pagán v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

Considering the reasons above mentioned, the Court finds that the ALJ's conclusion that Plaintiff could perform at least some gainful activity is supported by substantial evidence.

## CONCLUSION

In sum, the Commissioner's decision is hereby AFFIRMED because the Court finds there is substantial evidence on record to support the Commissioner's decision that Plaintiff was not disabled.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

Brenda Ortíz Maldonado v. Kilolo Kijakazi
Opinion and Order
Civil No. 19-1382 (CVR)
Page No. 18

In San Juan, Puerto Rico, on this 2nd day of November 2021.

        S/CAMILLE L. VELEZ-RIVE
        CAMILLE L. VELEZ RIVE
        UNITED STATES MAGISTRATE JUDGE